**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Janel Medina,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-20-00867-PHX-SPL<br><br>**ORDER** |

  At issue is the denial of Plaintiff Janel Medina's Application for Disability Insurance Benefits by the Social Security Administration (SSA) under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 17, "Pl. Br.") Defendant SSA Commissioner's Response Brief (Doc. 18, "Def. Br."), and Plaintiff's Reply Brief (Doc. 19, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 16, "R.") and now affirms the Administrative Law Judge's decision (R. at 13–24) as upheld by the Appeals Council (R. at 1–3).

**I. BACKGROUND**

  Plaintiff filed an Application for Disability Insurance benefits on July 7, 2016, for a period of disability beginning on April 1, 2016. (R. at 13.) Her claim was denied initially on September 8, 2016, and upon reconsideration on March 1, 2017. (R. at 13.) Plaintiff appeared before the ALJ for a hearing regarding her claim on February 6, 2019, which the

ALJ denied on April 12, 2019. (R. at 13, 24.) On March 12, 2020, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the agency's final decision. (R. at 1–3.)

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: attention deficit disorder; depression; mild cognitive disorder; and adjustment disorder. (R. at 15.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability onset-date through the date of the decision. (R. at 24.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 16.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"): "[Plaintiff] has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: [she] is able to perform simple and routine work involving simple work-related decisions and simple instructions not involving public contact." (R. at 18.) Accordingly, the ALJ found that Plaintiff can perform jobs that exist in significant numbers in the national economy. (R. at 23.)

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a

"specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**III. ANAYSIS**

Plaintiff raises two issues before the Court. First, Plaintiff argues the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 17–22.) Second, Plaintiff argues the ALJ erred in rejecting the opinion of Dr. John R. Walker, III, Psy.D. (Pl. Br. at 11–17.) The Court finds the ALJ provided specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony. The Court also finds that the ALJ provided specific and legitimate reasons supported by substantial evidence in assigning little weight to Dr. Walker's opinion. For the following reasons, the Court affirms.

**A.    The ALJ provided specific, clear, and convincing reasons supported by substantial evidence in rejecting Plaintiff's symptom testimony.**

Plaintiff argues the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 17–22.) An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen*, 80 F.3d at 1281). This is the most demanding standard in Social Security cases. *Id.* at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

Here, the ALJ found "that [Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 18.)

The ALJ found that Plaintiff's symptom testimony was not consistent with the evidence for three main reason: (1) Plaintiff's primary treatment consisted of medications and outpatient visits and was effective; (2) the medical record does not show an increase in Plaintiff's symptoms during the relevant period suggesting that her symptoms were not as severe as she alleged and that she could have engaged in substantial gainful activity during that time; and (3) Plaintiff's activities of daily living ("ADLs") were not as limited

as would be expected given Plaintiff's reports of disabling symptoms and limitations. (R. at 19.)

The ALJ recounted Plaintiff's medical history in describing why she discounted Plaintiff's symptom testimony. The ALJ described that Plaintiff was in an automobile accident and sustained a pelvic fracture and was treated for a closed head injury more than 30 years ago (R. at 19, 237–59.) Three weeks after the accident, though Plaintiff had a significant cognitive impairment, her verbal testing was still in the average range. (R. at 19, 243.) At that time, a neuropsychologist said that it was too early to determine Plaintiff's ability to go to school and work but that she seemed to be a good candidate to continue her education. (R. at 19, 243.) Plaintiff earned an associate degree and engaged in substantial gainful activity for years. (R. at 19, 36, 161, 166, 179–85.) Plaintiff worked as an x-ray technician and mammography specialist. (R. at 19, 36, 161, 166, 179–85.)

Plaintiff had a neuropsychological evaluation in 2011 which showed Plaintiff had a full-scale IQ of 88, average verbal compression at 100, and working memory and processing speed of 81. (R. at 19, 262.) The neuropsychologist diagnosed a traumatic brain injury, cognitive disorder, and adjustment disorder, but the deficits during testing did not appear severe. (R. at 19, 263–65.) After this 2011 evaluation, there is no evidence of treatment or evaluation again until 2016. (R. at 19.)

In May 2016, Plaintiff indicated that she had been unable to maintain meaningful employment for 20 to 30 years, and she was also frustrated with the Social Security process. (R. at 19–20, 269.) In June 2016, Plaintiff indicated she was having difficulty in a menial position. (R. at 20, 268.) On July 29, 2016, Plaintiff told a neuropsychologist that she planned to get Social Security. (R. at 20, 267.) In December 2016, Plaintiff purchased a new home and reported she was doing well. (R. at 20, 366.)

Plaintiff's earnings query reflects that she has had only three employers over the last 15 years, but Plaintiff allegedly provided a list of hundreds of employers to Dr. Walker. (R. at 20, 163–65, 267.) The ALJ noted that Plaintiff's symptom testimony was that she had anxiety, emotional changes, difficulty concentrating, paranoia, and feelings of guilt.

(R. at 20, 273–80, 358, 361, 364, 419–24.) The ALJ found that the medical reports indicated that Plaintiff was grossly oriented to person, place, and time, her communication was within normal limits, voice quality was normal, articulation was normal, and there was no evidence of aphasia. (R. at 20, 310–38, 381–401.)

First, the ALJ found that Plaintiff's conservative treatment contradicted Plaintiff's symptom testimony. (R. at 19.) Plaintiff had monthly visits with a psychologist. (R. at 20, 352–66.) Plaintiff was prescribed Adderall, Celexa, and Wellbutrin by her primary care physician and had good results. (R. at 20, 274, 326, 379, 382.) Plaintiff's mood and affect were appropriate, her mental status examination was normal, and she reported her symptoms were better with medication. (R. at 20, 274, 336.) The ALJ also noted that Plaintiff's treatment consisted primarily of routine non-emergency outpatient visits, counseling, and psychiatric medication. (R. at 19, 40, 326, 329, 333, 336, 379, 382, 385, 388, 396, 398, 399, 401.) Plaintiff's treating physician noted that Plaintiff's condition is alleviated with medication. (R. at 20, 329, 333, 336.) Plaintiff argues that this evidence in insufficient because Plaintiff was also placed in a comprehensive neuro-rehabilitation program in an attempt to return her to the workplace. (Pl. Br. at 19–20.) But, ALJs may properly rely on a claimant's documented improvement and pursuit of only conservative treatment, so long as substantial evidence supports that reliance. *See Tommasetti*, 533 F.3d at 1039–40. Here, there is substantial evidence to show that Plaintiff's symptoms improved with medication and that she received only conservative treatment.

Second, the ALJ found that the medical record does not show an increase in Plaintiff's symptoms during the relevant period suggesting that her symptoms were not as severe as she alleged. (R. at 19.) Plaintiff does not address this reason the ALJ provided for discounting her symptom testimony in her opening brief. Defendant noted that when tested, Plaintiff scored 29 out of 30, indicating "no likelihood of cognitive impairment" despite her car accident 30 years earlier. (Def. Br. at 6; R at 279.) Defendant also indicated that though Plaintiff indicated she had extreme difficulty getting along with other people, clinical findings showed that she had good grooming, hygiene, and direct and steady eye

contact. (Def. Br. at 6; R. at 42–43, 193, 278–79.) Additionally, mental status examinations often showed Plaintiff spoke in a normal manner, had an appropriate affect, and had a normal mood. (Def. Br. at 7; R. at 328, 331, 335, 338.) The ALJ appropriately found that Plaintiff's symptoms were consistent throughout the relevant period indicating Plaintiff's symptoms were not as severe as alleged.

Additionally, the ALJ found Plaintiff's ADLs were not as limited as would be expected given Plaintiff's reports of disabling symptoms and limitations. (R. at 19.) The ALJ noted that Plaintiff is home with her kids and cares for her minor daughter, who has a disability. (R. at 19, 37–38.) Plaintiff indicated during the hearing that helping her daughter takes a lot of time. (R. at 37–38.) Plaintiff also performs household chores such as cooking, shopping, and laundry. (R. at 19, 41, 190–91.) The ALJ also pointed out that Plaintiff horseback rides, goes to the movies, and swims. (R. at 19, 192.) The ALJ opined that these ADLs indicated that Plaintiff would need to engage in focus and concentration which contradicts Plaintiff's symptom testimony that she has problems with remembering, concentrating, and interacting with others. (R. at 19.) Plaintiff argues the ALJ did not determine that Plaintiff spends a substantial part of her day engaged in these ADLs and as such, did not provide clear and convincing evidence. (Pl. Br. at 21.) *See Blau v. Astrue*, 263 Fed. App'x 635, 637 (9th Cir. 2008). But Plaintiff indicated at the hearing that she is busy all day long. (R. at 42.) Plaintiff stated that on a typical day, she gets her daughter ready for school, the school bus comes, then she drives her other daughter to grade school and comes home, then she does chores around the house all day. (R. at 17, 42, 189–91, 277.) So, the ALJ's conclusion that Plaintiff's ADLs do not align with Plaintiff's symptom testimony is supported by the evidence

The Court finds that the ALJ provided specific, clear, and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony.

**B.     The ALJ did not err in assigning little weight to Dr. Walker's opinion.**

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th

Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* This is so because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830–31). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ gave little weight to Dr. Walker's opinion from his November 2016 report. (R. at 22, 419–24.) In that opinion, Dr. Walker opined that Plaintiff was unable to meet competitive standards in interacting appropriately with the general public and maintaining socially appropriate behavior, and she would be absent from work about three days a month. (R. at 419–24.) Dr. Walker opined that Plaintiff would have difficulty remembering very short, simple instructions; accepting instructions and responding to criticism from supervisors; getting along with peers; and responding appropriately to changes in the workplace. (R. at 421.) Dr. Walker also indicated Plaintiff would be limited in her abilities to deal with stress, take precautions, sustain a routine without special supervision, and maintain attendance. (R. at 423.) The ALJ opined that although Dr. Walker was a treating provider, his assessment was overly restrictive because: (1) Plaintiff had conservative

mental health treatment; (2) Plaintiff was able to perform numerous ADLs; (3) Dr. Walker's opinion was inconsistent with the opinions of three state agency psychologists; and (4) Dr. Walker relied on Plaintiff's subjective complaints, including Plaintiff's work history. (R. at 22.)

First, Plaintiff argues that ALJ has not provided evidence to show that Plaintiff's therapy and medication management were conservative and that they helped her to improve. (Pl. Br. at 14.) Plaintiff has received ongoing treatment for her mental impairments that include counseling and medication. (R. at 260–69, 284–344, 352–402, 419–24.) Dr. Walker's notes reflect that Plaintiff responded well to her medications and was functioning reasonably well. (R. at 352–57, 360–62, 366.) When a physician's opinion is inconsistent with a claimant's improvement, an ALJ may discount the opinion on that basis. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Dr. Walker's notes were inconsistent with his opinion because they generally showed Plaintiff was doing well and that she is responding to her medication. Nothing in Dr. Walker's notes indicates he needed to increase the amount of counseling she received or that her medications were not helpful. In fact, Plaintiff did well in therapy and her medications were helpful, so Dr. Walker's opinion was inconsistent with Plaintiff's treatment.

Second, Plaintiff argues the ALJ erred in not explaining how limited Plaintiff was in her ADLs. (Pl. Br. at 15.) This issue was discussed in the previous section and the Court affirms this reasoning provided by the ALJ.

Next, the ALJ determined that Dr. Walker's opinion differed from the three state agency psychologists. (R. at 22.) Plaintiff does not address this in her opening brief. Defendant argues that Dr. Walker's clinical findings do not corroborate his opinion. (R. at 352–66.) Dr. Wayne General, Ph.D., the consultative examiner, and Dr. Raymond Noval, M.D., and Dr. Dara Gooby, Psy.D., the two state agency physicians, all found that Plaintiff could perform simple work with some social interaction, which directly contradicts Dr. Walker's opinion. (R. at 56–60, 72–74, 419–24.) And an ALJ can reject a medical opinion because it was inconsistent with other opinions. 20 C.F.R. § 404.1527(c)(4). Here, the ALJ

found that the three state agency physicians' opinions showed other medical evidence that was contradictory to Dr. Walker's opinion and showed that Dr. Walker's opinion was not accurate.

Plaintiff also argues Dr. Walker did not solely rely on her subjective symptoms in rendering his opinion. (Pl. Br. at 16.) Dr. Walker's clinical findings and his progress notes do not reflect his extreme opinion that Plaintiff could not even sustain simple work. (R. at 267–69, 352–66.) Dr. Walker described the severity of Plaintiff's mental impairments as unremarkable. (R. at 419.) Dr. Walker's opinion indicated that Plaintiff could not work, which differs greatly from his notes indicating that Plaintiff's mental impairments were unremarkable. Because Dr. Walker's notes do not reflect his opinion, he likely relied on Plaintiff's subjective complaints in making his opinion.

Finally, Plaintiff argues the ALJ failed to review the entirety of her work history and short-lived employment positions, and because the ALJ failed to consider this evidence, this cannot be a specific and legitimate reason for discrediting Dr. Walker's opinion. (Pl. Br. at 17.) Dr. Walker's opinion relied in part on Plaintiff's statement and a document she showed him, indicating she had worked dozens, if not hundreds of jobs over the past 30 years since her accident and that her mental impairments had prevented her from sustaining meaningful employment. (R. at 20, 22, 267.) The ALJ pointed out that, in contradiction to what she told Dr. Walker—that Plaintiff worked for 31 employers in the last 30 years since her accident—Plaintiff's earnings records from the past 15 years show that Plaintiff only had three employers. (R. at 20, 154–64.) The record also shows Plaintiff worked for the same employer over multiple years, which contradicts her statements about not being able to sustain meaningful employment. (R. at 154–61.)

The ALJ provided several specific and legitimate reasons supported by substantial evidence for assigning little weight to Dr. Walker's opinion. The Court finds the ALJ did not err in assigning little weight to Dr. Walker's opinion.

## IV. CONCLUSION

Substantial evidence supports the ALJ's nondisability determination. The ALJ provided specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony and provided specific and legitimate reasons supported by substantial evidence in considering the medical opinion of Dr. Walker.

**IT IS THEREFORE ORDERED affirming** the April 12, 2019 decision of the Administrative Law Judge (R. at 13–24), as upheld by the Appeals Council on March 12, 2020 (R. at 1–3).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 7th day of April, 2021.

Honorable Steven P. Logan
United States District Judge